1  JOHN C. KIRKE, #175055
   jkirke@donahue.com
2  ANDREW S. MACKAY, #197074
   amackay@donahue.com
3  HAYLEY M. LENAHAN, #343528
   hlenahan@donahue.com
4  DONAHUE FITZGERALD LLP
   Attorneys at Law
5  1999 Harrison Street, 26th Floor
   Oakland, California 94612
6  Telephone:    (510) 451-3300
   Facsimile:    (510) 451-1527
7
   MICHAEL S. LEVITZ (*pro hac vice to be filed*)
8  levitz@drummlaw.com
   Drumm Law LLC
9  12650 W. 64th Avenue, #519
   Arvada, CO 80004
10 Telephone:    (617) 750-2509

11 Attorneys for Plaintiff DREYER'S GRAND ICE
   CREAM, INC.
12

13                 UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                      OAKLAND DIVISION

16 DREYER'S GRAND ICE CREAM, INC.,          Case No.

17           Plaintiff,                     **COMPLAINT FOR DECLARATORY
                                            RELIEF**
18      v.

19 FOSTER FARMS, INC., d/b/a CRYSTAL
   CREAMERY, INC., and CRYSTAL
20 CREAMERY, INC.,

21           Defendants.

22

23       Plaintiff, DREYER'S GRAND ICE CREAM, INC. (hereinafter "Dreyer's") by and through

24 its attorneys, hereby alleges as follows.

25                         **INTRODUCTION**

26       1.     This is a civil, federal question, action for declaratory relief, by which Dreyer's seeks

27 a declaration that it would substantially impair Dreyer's express contract rights, in violation of

28 Contracts Clauses of the United States Constitution, U.S. Const. art. 1, § 10, cl. 1, and of the

-1-
COMPLAINT FOR DECLARATORY RELIEF

1  California State Constitution, art. 1, § 9, if defendant Foster Farms, Inc. dba Crystal Creamery and

2  defendant Crystal Creamery, Inc. (collectively, "Crystal Creamery") were permitted to enforce

3  Section 20035 of the California Franchise Relations Act, Cal. Bus. & Pro. Code sections 20000-

4  20004 ("CFRA"), which Section was significantly amended after the parties contracted, to provide

5  a damages remedy that previously did not exist.

6          2.        Dreyer's also seeks declarations, arising out of the same facts and circumstances,

7  that:

8          a.        The distributorship, established by the distributor agreement dated January 1,

9  2015 (the "Distribution Agreement"), was not a franchise within the meaning of the CFRA.

10         b.        Dreyer's termination notice (the "Notice") complied with the express terms

11 of the Distribution Agreement;

12         c.        Even if the CFRA applied:

13                   i.        Dreyer's offer to extend the notice period cured any notice defect;

14                   ii.       Crystal Creamery was not entitled, under the CFRA, to a six-month

15 period in which it might sell that part of its business it contends to constitute a "franchise;"

16                   iii.      The Distribution Agreement's contractual damage limitations would

17 still be enforceable to defeat each and all of Crystal Creamery's contract and tort-based claims;

18                   iv.       Termination of the Distribution Agreement was legal on other

19 grounds, being Crystal Creamery's continuous violation of Cal. Food & Agricultural Code ("FAC")

20 section 61383, a material and non-curable breach of the Distribution Agreement.

21         d.        Dreyer's post-Notice communications with customers purchasing Dreyer's

22 products from Crystal Creamery was expressly permitted by the Distribution Agreement, and

23 therefore:

24                   i.        Dreyer's did not tortiously interfere with Crystal Creamery's

25 contracts or relationships;

26                   ii.       Dreyer's did not commit any unfair or deceptive acts or practices

27 giving rise to a claim by Crystal Creamery under California's Unfair Competition Law (UCL), Cal.

28 Bus. & Prof. Code sections 17200-17210; and

1      e.      Dreyer's did not breach the Distribution Agreement.

2      3.     Crystal Creamery denies each of the declarations sought by Dreyer's in this

3 Complaint.  Thus, a current, actual controversy exists for each of Dreyer's Counts for Declaratory

4 Relief set forth in detail below.

5 **SUBJECT MATTER JURISDICTION**

6      4.     The Court has federal question jurisdiction over this controversy pursuant to 28 U.S.

7 Code § 1331, on account of Dreyer's constitutional challenge.

8      5.     The Court has supplementary jurisdiction over Dreyer's other claims for declaratory

9 relief, under 28 U.S. Code § 1367, in that they arise under the same facts and circumstances giving

10 rise to the aforesaid federal question.

11 **DIVISIONAL ASSIGNMENT**

12     6.     Pursuant to Local Rules 3-2(c) and 3-5(b), Divisional Assignment to Oakland

13 Division is appropriate because Plaintiff, Dreyer's, is headquartered in Oakland, and the parties

14 contractually agreed, in the Distribution Agreement, that the "state and federal courts of Alameda

15 County, California will have exclusive jurisdiction of any and all lawsuits."

16 **PERSONAL JURISDICTION AND VENUE**

17     7.     The court has personal jurisdiction over Crystal Creamery, due to the venue

18 provision of the Distribution Agreement, by which Crystal Creamery agreed that the "state and

19 federal courts of Alameda County, California will have exclusive jurisdiction of any and all

20 lawsuits."

21 **PARTIES**

22     8.     Dreyer's is a corporation existing under the laws of the State of Delaware, is

23 headquartered at 5929 College Avenue, Oakland, California, and is a leading U.S. manufacturer ice

24 cream and other frozen dessert products ("Ice Cream").

25     9.     Crystal Creamery is a corporation existing under the laws of the State of California,

26 is headquartered at 529 Kansas Avenue, Modesto, California, claims to be California's oldest dairy,

27 and manufactures various Crystal Creamery® brand products, including Ice Cream ("Crystal

28 Creamery® Ice Cream").

COMPLAINT FOR DECLARATORY RELIEF

# FACTS COMMON TO ALL COUNTS

10.     Dreyer's manufactures various brands of Ice Cream ("Dreyer's Made Ice Creams" or "DMICs").

11.     Each of the DMICs is manufactured and sold under indirect licensing arrangement ("Licenses") with third-party brand owners (the "Brand Owners"), each of which is publicly traded, and leaders in their industries.

12.     The DMICs manufactured under the Licenses include: Chips Ahoy!® (a Mondelez mark); Crunch® (a Nestlé mark); Dreyer's (an unregistered Nestlé mark); Drumstick® (a Nestlé mark); Häagen-Dazs® (a General Mills mark); Kit Kat® (a Nestlé mark); Mickey Mouse® (a Disney mark); Nestlé® (a Nestlé mark), Oreo® (a Mondelez mark); Outshine® (a Nestlé mark), Rolo® (a Nestlé Mark) and Skinny Cow® (a Nestlé mark).

13.     With one exception not relevant here (the franchise agreements for Häagen-Dazs® ice cream shops), the Licenses do not permit Dreyer's to sublicense the marks under which the DMICs are manufactured (the "Non-Sublicensable Marks").

14.     Although Nestlé S.A. has an ownership interest in Dreyer's corporate parent, Froneri International, Ltd., none of the Brand Owners control, are controlled by, or are under common control with Dreyer's; with "control" meaning having a direct or indirect ownership of at least 50% of Dreyer's.

15.     Pursuant to its express terms, the Distribution Agreement was for an "initial term" of four years, during which time the Distribution Agreement was only terminable for cause; and following which the Distribution Agreement continued in full force and effect, on a month-to-month basis, subject to the right of either party to terminate the Distribution Agreement on 30 days' prior notice.

16.     Dreyer's delivered the Notice to Crystal Creamery on May 24, 2023, with an effective termination date of September 8, 2023, a 107-day notice period.

17.     Crystal Creamery contends that the Notice violated the Section 20025 of the CFRA, because Dreyer's did not provide Crystal Creamery with 180 days' notice of non-renewal.

COMPLAINT FOR DECLARATORY RELIEF

1    18.    Crystal Creamery contends that, as a result of the alleged notice defect, Crystal

2  Creamery is entitled to recover more than $20MM from Dreyer's as compensation for the terminated

3  business.

4    19.    Promptly upon becoming aware of Crystal Creamery's opinion, that the CFRA

5  applied, and prior to the effectiveness of the Notice, while disputing Crystal Creamery's opinion,

6  Dreyer's offered to extend the notice-period to comport with the 180-day requirement under Section

7  20025, as expressly contemplated by Section 20026 of the CFRA:

8         Nothing in Section 20025 shall prohibit a franchisor from offering …
          before expiration of the current franchise term to extend the term of
9         the franchise for a limited period in order to satisfy the time of notice
          of nonrenewal requirement of that section.
10

11    20.    During the year ending with the termination of the Distribution Agreement, DMICs

12  accounted for less than 4% of Crystal Creamery's sales.

13    21.    Crystal Creamery has two registered trademarks (the "Crystal Creamery Marks").

14    22.    Crystal Creamery does business under the Crystal Creamery Marks.

15    23.    The Crystal Creamery Marks appear:

16         a.    On the products Crystal Creamery's manufactures ("Crystal Creamery

17  Products") including Crystal Creamery Ice Cream;

18         b.    On Crystal Creamery's manufacturing and distribution facilities;

19         c.    On Crystal Creamery's trucks, including those which it used to deliver the

20  DMICs;

21         d.    On Crystal Creamery's employees' uniforms, including the uniforms of those

22  employees who delivered the DMICs to stores;

23         e.    On Crystal Creamery's website and social media accounts;

24         f.    On billboards paid for by Crystal Creamery;

25         g.    At community events that Crystal Creamery sponsors;

26         h.    On sponsorship materials and communications related to high school and

27  professional sporting events that Crystal Creamery sponsors; or

28

COMPLAINT FOR DECLARATORY RELIEF

1          i.          On miscellaneous items (collectively "Crystal Creamery Premiums"), from

2  time to time, which have included (a) a Lionel model train; (b) a replica, small scale, ice cream

3  truck; and (c) a cookie jar in the shape of a Crystal Creamery milk carton.

4          24.     In contrast, Non-Sublicensable Marks do not appear:

5                  a.     On the products Crystal Creamery's manufactures;

6                  b.     On Crystal Creamery's manufacturing and distribution facilities;

7                  c.     On Crystal Creamery's trucks;

8                  d.     On Crystal Creamery's employees' uniforms;

9                  e.     On Crystal Creamery's website and social media accounts;

10                  f.     On billboards paid for by Crystal Creamery;

11                  g.     At community events that Crystal Creamery sponsors;

12                  h.     On sponsorship materials and communications related to high school and

13  professional sporting events that Crystal Creamery sponsors; or

14          i.          On Crystal Creamery Premiums.

15          25.     Numerous consumer product goods (CPGs), other than the DMICs, are manufactured

16  and sold under the Non-Sublicensable Marks, including CPGs which are in many instances sold to

17  consumers as the very same stores as the DMICs.

18          26.     The Distribution Agreement prohibited Crystal Creamery from using any of the Non-

19  Sublicensable Marks, other than in a very limited, controlled manner, the bounds of which did not

20  exceed that permitted by the fair use doctrine under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

21  Section 4 of the Distribution Agreement prohibits:

22          Trademarks. Distributor will not use, authorize, or permit the use of
            any of Dreyer's licensed logos, trademarks or trade names, including
23          but not limited to, "Dreyer's," "Dreyer's Grand Ice Cream," "Edy's,"
            "Edy's Grand Ice Cream," "Nestlé," "Häagen-Dazs," "The Skinny
24          Cow," "Eskimo Pie," "Tombstone," "Jack's," "DiGiorno," and
            "California Pizza Kitchen," or any other trademarks or trade names
25          licensed to, used or owned by NDIC or any Affiliate (collectively, the
            "NDIC Marks") now or in the future without the prior written consent
26          of NDIC; provided however, that Distributor may use the NDIC
            Marks, in accordance with NDIC then current trademark usage
27          guidelines, on Distributor price lists and standard promotional flyers
            without NDIC's prior written consent. Distributor will not contest the
28          right of NDIC to the exclusive use of any NDIC Marks.

-6-
COMPLAINT FOR DECLARATORY RELIEF

27.     Section 22.5 of the Distribution Agreement establishes a generally applicable limitation of damages provision:

> NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR EXEMPLARY DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, EVEN IF THE PARTIES HAVE KNOWLEDGE OF THE POSSIBILITY OF SUCH DAMAGES.

28.     Section 21.5 of the Distribution Agreement establishes an additional limitation of damages provision, in respect to the agreement's eventual termination:

> Upon the expiration or termination of this Agreement: (a) neither party will be liable to the other because of such expiration or termination for damages on account of the loss of prospective profits, good will, or on account of leases or commitments in connection with the business of Distributor or of NDIC, or for any other reason whatsoever arising from such expiration or termination; ...

## COUNT I

### (DECLARATORY RELIEF; FEDERAL CONTRACTS CLAUSE)

29.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

30.     The Distribution Agreement was first effective on January 1, 2015.

31.     Prior to the 2016 amendment of Section 20035, the CFRA did not contain a provision for an award of damages on account of an inadequate notice of non-renewal, limiting relief to "repurchase of the franchisee's inventory." *See Boat & Motor Mart v. Sea Ray Boats, Inc.*, 825 F.2d 1285, 1290 (9th Cir. 1987).

32.     Section 20035 was amended effective on January 1, 2016; exactly one year from the inception of the Distribution Agreement.

33.     As amended Section 20035, subsection (a), creates a right of damages for certain violations of the CFRA:

> (a) In the event a franchisor terminates or fails to renew a franchisee, in violation of this chapter, the franchisee shall be entitled to receive from the franchisor the fair market value of the franchised business and franchise assets and any other damages caused by the violation of this chapter.

-7-
COMPLAINT FOR DECLARATORY RELIEF

34. Crystal Creamery contends that, pursuant to Section 20035(a), it is entitled to recover in excess of $20MM on account of the Notice not having been provided at least 180 days prior to its effective date.

35. Enforcement of Section 20035 against Dreyer's, under these circumstances, would violate the Contracts Clause of the United States Constitution, U.S. Const. art. 1, § 10, cl. 1; both because (i) Section 20035(a) establishes a remedy that did not exist at the time the parties contracted, which if enforced against Dreyer's would result in a forfeiture; and (ii) because enforcement of Section 20035(a) would preclude Dreyer's from relying on the damages limitations provisions to which the parties contractually agreed to as part of their bargain.  Enforcement of Section 20035 in this particular situation both substantially impairs Dreyer's pre-existing contractual rights and does not serve a significant and legitimate public purpose that outweighs this impairment.

36. Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in the Prayer below.

## COUNT II

### (DECLARATORY RELIEF; CALIFORNIA CONTRACTS CLAUSE)

37. Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

38. Enforcement of Section 20035 against Dreyer's, under these circumstances, would violate the Contracts Clause of the California State Constitution, art. 1, § 9; both because (i) Section 20035(a) establishes a remedy that did not exist at the time the parties contracted, which if enforced against Dreyer's would result in a forfeiture; and (ii) because enforcement of Section 20035(a) would preclude Dreyer's from relying on the damages limitations provisions to which the parties contractually agreed as part of their bargain.

39. Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in the Prayer below.

COMPLAINT FOR DECLARATORY RELIEF

## COUNT III

### (DECLARATORY RELIEF; BREACH OF CONTRACT: TERMINATION)

40.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

41.     The Notice satisfied the express terms of the Distribution Agreement.

42.     Dreyer's termination of the Distribution Agreement did not breach the Distribution Agreement.

43.     Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in the Prayer below.

## COUNT IV

### (DECLARATORY RELIEF; BREACH OF CONTRACT: COMMUNICATING WITH ACCOUNTS)

44.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

45.     The Distribution Agreement, by its express terms, permitted Dreyer's to contact accounts, after issuance of the Notice, in order to discuss a transition to other distributors.

46.     In general, in Section 17 of the Distribution Agreement, Crystal Creamery:

> … represents and covenants to [Dreyer's] that: … (e) it will not interfere with [Dreyer's] ability to contact Accounts …

47.     Crystal Creamery also expressly agreed, in Section 21.7 of the Distribution Agreement agreed that, following the Notice, Dreyer's would have a right to discuss, with accounts, transition to another distributor:

> In the event either party provides the other a written notice of termination …, [Dreyer's] will have the right prior to the effective date of that termination to discuss with Accounts the transition of Accounts to [Dreyer's] or another [Dreyer's] Distributor.

48.     Dreyer's communications to accounts, after sending the Notice, was expressly permitted by the Distribution Agreement.

1      49.     Dreyer's did not, by communicating with accounts after sending the Notice, breach

2 the Distribution Agreement.

3      50.     Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in

4 the Prayer below.

5

6 **COUNT V**

7 **(DECLARATORY RELIEF; TORTIOUS INTERFERENCE)**

8      51.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set

9 forth herein.

10     52.     Dreyer's communications with accounts, after sending the Notice, did not tortiously

11 interfere with Crystal Creamery's contracts or relationships.

12     53.     Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in

13 the Prayer below.

14

15 **COUNT VI**

16 **(DECLARATORY RELIEF; UCL)**

17     54.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set

18 forth herein.

19     55.     Dreyer's communications to accounts, after sending the Notice, were not unfair or

20 deceptive acts or practices prohibited by California's Unfair Competition Law (UCL), Cal. Bus. &

21 Prof. Code §§ 17200-17210.

22     56.     Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in

23 the Prayer below.

24

25 **COUNT VII**

26 **(DECLARATORY RELIEF; CONTRACTAL DAMAGES LIMITATIONS)**

27     57.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set

28 forth herein.

COMPLAINT FOR DECLARATORY RELIEF

58.     The Distribution Agreement's damage limitation provisions are enforceable, such that Crystal Creamery cannot recover damages from Dreyer's on account of any alleged (i) breach of contract, (ii) tortious interference, or (iii) UCL claim.

59.     Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in the Prayer below.

**COUNT VIII**

**(DECLARATORY RELIEF; CFRA INAPPLICABLE)**

60.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

61.     The Distribution Agreement's contractual restriction respecting Crystal Creamery's use of the Non-Sublicensable Marks did not grant Crystal Creamery a right to substantially associate its business with any of the Non-Sublicensable Marks.

62.     Crystal Creamery's business was not substantially associated with any of the Non-Sublicensable Marks, and therefore the distributorship was not a "franchise" within the meaning of the CFRA. *See Gabana Gulf Distribution, Ltd. v. Gap International Sales, Inc.,* No. C 06 2584 CRB (EDL) (N.D. Cal.) Memorandum and Order, January 9, 2008, p. 7, aff'd 343 Fed. App'x 258, 259 (9th Cir. Aug. 24, 2009).

63.     Because Crystal Creamery received something of independent value for the use of the Freezers, and the Rents were not in excess of fair market rents, the rents were not a "franchise fee." *See Adees Corp. v. Avis Rent a Car Systems, Inc.,* 157 F. App'x 2 (9th Cir. 2005) (fleet surcharge paid in exchange for the use of Avis's cars not a franchise fee under the CFRA).

64.     The Rents were not a "franchise fee" as defined by the CFRA, and therefore the distributorship was not a "franchise" within the meaning of the CFRA.

65.     Because California law, FAC sections 61382-61384, prohibits a dairy industry participant from providing equipment without payment, and the providing of Freezers is a standard practice in the industry, absent which Dreyer's could not compete against its rivals, the Rents were

1  not a "franchise fee" as defined by the CFRA, and therefore the distributorship was not a "franchise"

2  within the meaning of the CFRA.

3       66.    Because California law, FAC sections 61382-61384, prohibits a dairy industry

4  participant from providing equipment without payment, and the Rents would have been passthrough

5  expenses had Crystal Creamery complied with FAC sections 61382-61384, the net Rents it paid as

6  a result of its noncompliance with laws were not a "franchise fee" as defined by the CFRA, and

7  therefore the distributorship was not a "franchise" within the meaning of the CFRA. *See Thueson v.*

8  *U-Haul Intern. Inc.*, 144 Cal. App. 4th 664, 50 Cal. Rptr. 3d 699, (Ct. App. 2006) (rents for

9  equipment were a passthrough, and not a franchise fee under the CFRA).

10       67.    Because Crystal Creamery was in the ice cream business prior to its relationship with

11  Dreyer's, the Rents were not paid for the right to begin a business, and therefore were not a

12  "franchise fee" as defined by the CFRA, and therefore the distributorship was not a "franchise"

13  within the meaning of the CFRA.

14       68.    Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in

15  the Prayer below.

16

17  **COUNT IX**

18  **(DECLARATORY RELIEF; OFFER TO EXTEND NOTICE SATISFIED THE CFRA)**

19       69.    Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set

20  forth herein.

21       70.    Even if the distributorship was a franchise under the CFRA, Dreyer's extension offer

22  cured any notice defect.

23       71.    Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in

24  the Prayer below.

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF

**COUNT X**

**(DECLARATORY RELIEF; OPPORTUNITY TO SELL INAPPLICABLE)**

72.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

73.     This Distribution Agreement does not contain (and Dreyer's has not sought to enforce) any post-term covenant against competition against Crystal Creamery.

74.     The termination of the Distribution Agreement was not for the purpose of "converting [Crystal Creamery's] business premises to operation by employees or agents of [Dreyer's]."

75.     The opportunity to sell its business, contemplated by Section 20025(a) of the CFRA, does not apply, because Dreyer's termination comported with Section 20025(b).

76.     Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in the Prayer below.

**COUNT XI**

**(DECLARATORY RELIEF; TERMINATION MAY BE UPHELD
DUE TO VIOLATIONS OF LAW)**

77.     Dreyer's repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

78.     Crystal Creamery's failure to collect rents, from California retailers and subdistributors, for the use of the Freezers, violated Cal. FAC section 61382-61384, subjecting it to potential civil and criminal liability and penalties.

67.     Section 25 of the Distribution Agreement obligated Crystal Creamery to comply with applicable law:

> Compliance with Applicable Law. Distributor agrees to comply with all applicable federal, state and local (including foreign) laws, rules and regulations in connection with the performance of this Agreement, ...

-13-

COMPLAINT FOR DECLARATORY RELIEF

79.     Crystal Creamery's violation of laws was a non-curable, material breach of the Distribution Agreement, pursuant to Section 21.3, establishing good cause for its termination:

> Either party may terminate this Agreement for cause by providing written notice to the other party describing the specific material obligations that such party has failed to meet in this Agreement. … Distributor will not have the right to any … cure period for terminations covered by … Section 25 ...

80.     Prior to the effective date of termination, Dreyer's counsel informed Crystal Creamery's counsel, that Crystal Creamery's failure to collect rent for the Freezers was a violation of law.

81.     Crystal Creamery's non-compliance with law continued for more than 10 days after Crystal Creamery's counsel was informed of Crystal Creamery's violation of laws, prior to the effective date of the Notice.

82.     Under Section 20021 of the CFRA, a franchisor has good cause for termination if:

> (e) The franchisee fails, for a period of 10 days after notification of noncompliance, to comply with any federal, state, or local law or regulation, including, but not limited to, all health, safety, building, and labor laws or regulations applicable to the operation of the franchise;

72.     Under Section 20021 of the CFRA, a franchisor has good cause for termination if:

> (g) The franchisee repeatedly fails to comply with one or more requirements of the franchise, whether or not corrected after notice;

73.     Even if the distributorship was a franchise under the CFRA, Dreyer's termination of Crystal Creamery would not violate the CFRA, because Dreyer's had alternative good-cause grounds, under the CFRA, to terminate the distributorship.

83.     Dreyer's seeks a declaration from the Court of the rights of the parties as set forth in the Prayer below.

## PRAYER FOR RELIEF

WHEREFOR, Dreyer's prays for the following relief:

-14-

COMPLAINT FOR DECLARATORY RELIEF

1   1.  As to Count I, an Order declaring that enforcement of Section 20035 of CFRA under

2 the extant circumstances would violate the Contracts Clause of the United States Constitution, U.S.

3 Const. art. 1, § 10, cl. 1;

4   2.  As to Count II, an Order declaring that enforcement of Section 20035 of CFRA under

5 the extant circumstances would violate the Contracts Clause, art. 1, § 9 of the California States

6 Constitution;

7   3.  As to Count III, an Order declaring Dreyer's termination of the Distribution

8 Agreement was not a breach of contract;

9   4.  As to Count IV, and Order declaring that Dreyer's post-Notice communication with

10 accounts was not a breach of contract;

11   5.  As to Count V, an Order declaring that Dreyer's did not tortiously interfere with any

12 of Crystal Creamery's contracts or relationships;

13   6.  As to Count VI, an Order declaring that Dreyer's did not violate California's Unfair

14 Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200-17210;

15   7.  As to Count VII, an Order declaring that the contractual limitation of damages

16 provisions in the Distribution Agreement bar Crystal Creamery from recovering for (i) breach of the

17 Distribution Agreement, (ii) tortious interference with Crystal Creamery's contracts or relationships,

18 and (iii) any violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§

19 17200-17210;

20   8.  As to Count VIII, an Order declaring that the distributorship was not a "franchise"

21 within the meaning of the CFRA;

22   9.  As to Count IX, an Order declaring that, if the distributorship was a "franchise"

23 within the meaning of the CFRA, then Dreyer's offer to extend the termination notice period cured

24 any notice defect;

25   10.  As to Count X, an Order declaring that the selling opportunity contemplated by

26 Section 20025(a) of the CFRA is inapplicable because Dreyer's termination comported with Section

27 20025(b) of the CFRA.

28

COMPLAINT FOR DECLARATORY RELIEF

11.     As to Count XI, an Order declaring that, if the distributorship was a "franchise" within the meaning of the CFRA, then Dreyer's termination of the Distributorship did not violate the CFRA, on account of Crystal Creamery's violations of laws, which is a non-curable material breach of the Distribution Agreement.

12.     On all Counts, an award of attorneys' fees and costs, pursuant to Section 26.5 of the Distribution Agreement, which provides: "The prevailing party in any legal action relating to this Agreement will be entitled to recover its reasonable attorneys' fees, litigation costs, and expenses incurred in connection with such action."

13.     And for all Counts, such other and further relief as the Court deems proper.


Dated:  December 15, 2023          DONAHUE FITZGERALD LLP
                                   Attorneys at Law



                                   By:  _____/s/ Hayley M. Lenahan_____
                                        John C. Kirke
                                        Andrew S. MacKay
                                        Hayley M. Lenahan

                                        Attorneys for Plaintiff
                                        DREYER'S GRAND ICE CREAM, INC.

COMPLAINT FOR DECLARATORY RELIEF